ANNA MURPHY, ADMINISTRATRIX AD PROSEQUENDUM
OF THE ESTATE OF RAYMOND MURPHY, DECEASED,
PLAINTIFF-RESPONDENT, v. THE CORE JOINT CON-
CRETE PIPE COMPANY, A CORPORATION OF THE
STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued October 25, 1932—Decided January 31, 1933.

For the appellant, *Kellogg & Chance.*

For the respondent, *Maurice J. McKeown* and *Coult, Satz & Tomlinson* (*De Voe Tomlinson,* of counsel).

The opinion of the court was delivered by ·

TRENCHARD, J.   The plaintiff brought this action under the Death act (*Comp. Stat., p.* 1907) to recover damages for the pecuniary loss sustained by herself and her children as the next of kin of her deceased husband, Raymond Murphy. She obtained a verdict at the Union Circuit, and the defendant appealed from the consequent judgment.

It was open to the jury to find from the evidence, if they saw fit, the following matters of fact:

The Core Joint Concrete Pipe Company, the defendant, occupied premises whereon it manufactured concrete pipe. The decedent was employed by F. Depretz & Son as a truck driver.   This firm had a contract or arrangement with the defendant to cart pipe from the premises of the defendant to such destinations as should be designated by the latter.   The defendant maintains on its premises certain pits.   These pits were excavated to such a depth that normally the platforms of the trucks on to which the pipes were loaded were on a level with the ground surrounding the tops of the pits.   On the day of the accident, the decedent drove one of his employer's trucks to the defendant's premises to get a load of pipes which he was then to take to New Brunswick.   This particular load consisted of four sections of pipe.   Each section was forty-eight inches in diameter, four feet in length and weighed three thousand six hundred pounds.   The decedent, in accordance with the usual custom, backed his truck into one of the pits for the purpose of having the sections of pipe loaded thereon.   This pit was four and one-half feet in depth, twelve feet in width and twenty-six feet in length.   The pipes were to be rolled on to the rear end of the truck and then placed in proper position.   It was the duty of the defendant's employes to load the pipes on the truck, and the decedent had no part therein, except to "chock" the pipes to steady them after they had been loaded.   The rain had washed down the rear end of the pit considerably with the result that the bank at the rear end sloped.   The consequence was that the rear platform of the truck could not completely reach that portion of the ground from which the pipes were to be rolled on to the

truck, there being a space of a foot and a half between the truck and the level ground. Because of that existing gap the defendant's employes took some old discarded planks which had been lying on the surrounding field and extended them from the level ground to the truck to cover this gap. They then rolled on to the truck three sections of pipe; two of these sections were placed in the front of the truck and one on the rear on the right side. The defendant's employes then started to roll on to the truck the last section, which was to be placed on the left side of the truck at the rear. While so engaged one of the planks broke, with the result that the pipe skidded over to one side at an angle, with one end of the pipe resting on the side of the bank and a portion of the side of the pipe resting on or against the truck. Thereupon defendant's superintendent caused the employes of the defendant to insert another plank under the pipe for the purpose of bracing it and then directed the decedent to pull his truck ahead so as to clear the pipe and the supporting plank. Decedent thereupon pulled his truck forward and then went to the rear of his truck in the pit to see if the truck was clear. As decedent pulled his truck out the defendant's employes endeavored to push the pipe up the side of the pit. The supporting plank, however, then broke with the result that one end of the pipe went down in the pit and struck decedent, who was standing by the rear end of the truck, and injured him so severely that he died one month later.

We shall hereafter refer to other incidental evidence as occasion requires.

The defendant-appellant first contends that the trial court erred in refusing to nonsuit and to direct a verdict for the defendant.

The argument is that these motions should have been granted (1) because at the time of the accident, the decedent was a mere licensee upon the premises of the defendant; and (2) because he was guilty of contributory negligence.

We think that the judge properly left to the jury the question of whether the decedent at the time of his injuries was an invitee or a mere licensee.

It is of course the general rule that the owner or occupier of lands who by invitation, express or implied, induces persons to come upon the premises, is under a duty to exercise ordinary care· to render the premises reasonably safe for the purposes embraced in the invitation. *Phillips* v. *Library Co., 55 N. J. L.* 307; *Nolan* v. *Bridgeton and Millville Traction Co.,* 74 *Id.* 559; *Mayes* v. *Splitdorf Electrical Co.,* 94 *Id.* 460; *Gibeson* v. *Skidmore,* 99 *Id.* 131; *Roper* v. *Commercial Fibre Co.,* 105 *Id.* 10.

It is well settled that where the occupier of lands engages an independent contractor to do work upon his premises, an employe of the contractor, while executing the work, is there presumably by the request of the occupier, and is an invitee and not a mere licensee. *Sommer* v. *Public Service Corp.,* 79 *N. J. L.* 349; *Riley* v. *Jersey Leather Co.,* 100 *Id.* 300.

Applying these principles, there can be no doubt that at the time the decedent entered with his employer's truck upon the premises of the defendant for the purpose of carrying out the contract between his employer and the defendant, he was by implication an invitee upon such premises. There can likewise be no doubt that at the time he backed the truck into the pit for the purpose of having the pipe loaded thereon, he was upon the defendant's premises by virtue of an implied invitation. There can likewise be no doubt that, at the time be moved the truck forward in pursuance of the request of the defendant's superintendent he was still an invitee upon the defendant's premises by implication.

The defendant contends, however, that after pulling the truck forward his status was changed from that of an invitee to that of a mere licensee. This contention apparently is based upon the assumption that the decedent had no right to go into the pit by the rear of his truck where he was injured. But such theory is ill-founded in point of fact. It entirely ignores the fact that it was open to the jury to find that he went to the place where he received his injury for the purpose of ascertaining if he had cleared the pipe when he pulled his truck forward, as defendant's superintendent ordered him

to do, and to be ready to nail in the "chock" immediately when the pipe was put on the truck, as it was his duty to do.

The defendant urges that the decedent had no right to go into the pit because of an instruction given to him by his employer (Depretz), who happened to be on the premises when the pipe slipped between the truck and the embankment, and before the truck had been moved forward. But that instruction was merely (as the jury may have found from the evidence) that the decedent should not take any part in the raising of the pipe, and was in consonance with the arrangement between Depretz and the defendant, to wit, that the employes of the defendant should have the full responsibility for these pipes until they were actually put on to the truck, after which the driver would "chock" the pipes and from thence on assume the responsibility therefor. Certainly that instruction did not mean that decedent was to stay away from the pit. So considered, the evidence tends to show that the instruction was not violated.

When, as here, it was open to the jury to infer from the evidence that, at the time of the accident, the decedent, in going forward in the pit, was naturally led to believe by the defendant's instructions, acts and conduct that the defendant intended that he should do what he did and as he did, in carrying out the work which his employer had contracted to do for the defendant, the question whether he was an invitee was for the jury and not for the trial judge.

Also, we think that the defendant's contention that the trial court improperly left to the jury the question whether the decedent was guilty of contributory negligence is without merit.

The reasons urged in support of this contention are substantially the same as those advanced by the defendant in support of its argument that the decedent was not an invitee.

No presumption of negligence upon the part of the decedent arises from the mere occurrence of the accident. *Danskin* v. *Pennsylvania Railroad Co.*, 79 *N. J. L.* 526. To justify a nonsuit or the direction of a verdict for the defendant, the contributory negligence of the decedent must clearly appear

conclusively as a fact, or by necessary exclusive inference from the proof. *Pennsylvania Railroad Co.* v. *Middleton,* 57 *Id.* 154; *Danskin* v. *Pennsylvania Railroad Co., supra.* The application of these principles to the present case shows clearly that the question of contributory negilgence was properly submitted to the jury.

Lastly the defendant-appellant says that the trial court erred in overruling the following question which was propounded by defendant's counsel to the widow of decedent on cross-examination: "*Q*. Did you see him during those three or four weeks?" (the period that decedent was in the hospital before his death).

At the trial counsel for the defendant did not indicate the purpose of the question. He now urges that the question had a bearing upon the pecuniary loss of the widow and the two children.

It is difficult to perceive how an answer to that question would have aided the jury in determining the question of pecuniary loss. But in any event its exclusion does not justify a reversal for it clearly appears that its exclusion did not injuriously affect the substantial rights of the defendant, and for this reason: After the widow had testified to the various facts relating to pecuniary loss, she was fully and completely cross-examined regarding her relations with her deceased husband. During the course of such cross-examination she testified as to the amounts of money contributed to her for herself and her children by the decedent, and also testified that for the period of three weeks preceding the accident she and her husband were separated; that during that time their daughter lived with her and that during at least part of the time their son was with the decedent's mother. Counsel also cross-examined her at length with reference to her places of residence. In short we find that the subject-matter of the question had already been the subject of exhaustive cross-examination. It was then that the question overruled was propounded. In such circumstances there cannot be a reversal, because the rule is that a judgment will not be reversed, on the ground of the improper exclusion of evidence,

unless, after examination of the whole case, it appears that the error injuriously affected the substantial rights of a party. *Spence* v. *Hutchinson,* 102 *N. J. L.* 131.

The judgment will be affirmed, with costs.

*For affirmance*—The Chancellor, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Brogan, Heher, Kays, Hetfield, Wells, Kerney, JJ.   13.

*For reversal*—None.