ABRAHAM SILVERSTEIN, BY HIS NEXT FRIEND, ANNA SILVERSTEIN, PLAINTIFF-RESPONDENT, v. HYMAN C. SCHNEIDER AND MANN'S CARRIAGE FACTORY, INCORPORATED, A CORPORATION, DEFENDANTS-APPELLANTS.

Submitted October 28, 1932—Decided January 31, 1933.

For the respondent, *Schneider & Schneider*.

For the appellants, *Holmwood & Creighton*.

The opinion of the court was delivered by

BROGAN, J. The case under consideration was tried in the Essex County Circuit Court and the record discloses the following happenings.

On August 17th, 1930, Abraham Silverstein, plaintiff, stood on the sidewalk at Hawthorne avenue near Hunterdon street, in the city of Newark, New Jersey. Hyman C. Schneider, a defendant, was towing a Dodge automobile truck belonging to the other defendant, Mann's Carriage Factory, Incorporated, and turned from Hunterdon street into Hawthorne avenue. The tow rope broke and the Dodge truck, which was being towed, ran up on the sidewalk, seriously injuring the plaintiff, as a result of which his left leg was amputated.

Now the plaintiff charges that the defendants were negligent and that their negligence was the proximate cause of his injury; that Schneider was driving his automobile in a reckless manner and was towing the automobile truck carelessly, operating by sudden and violent starts and jerks so that the truck, which was being towed, could not properly keep its course and that this manner of operation caused the tow rope to break and precipitated the auto truck onto the sidewalk where the plaintiff stood. There are other allegations of negligence against the defendant Schneider in that the rope used for the towing was old and worn; that he didn't inspect it; that it wasn't of sufficient length or strength to properly tow the automobile truck.

Prior to the happening, it appears that the truck of the Mann's carriage factory, for some reason or other, was unable to proceed to its garage on its own power and the driver, one Middleton, sent for one Biow, who was the secretary of the Mann's carriage factory. Biow, on arriving at the scene, was unable to start up the truck and called upon Schneider, a

friend, who lived nearby, to tow the truck to the company's garage. A rope was gotten from the Dodge truck and fastened therefrom by Biow to the rear of the Schneider car and the trip was started. Biow rode with Schneider in his car and the driver of the Mann's carriage factory sat in the Dodge truck to manage its operation.

Plaintiff recovered a judgment against both defendants in the sum of fifty thousand ($50,000) dollars and the defendant Schneider appeals.

The first ground of appeal is that the court was without jurisdiction to proceed with the trial on the ground that the plaintiff was mentally incompetent and insane.

Plaintiff sustained the injury on August 17th, 1930. He was in the hospital until December 28th, 1930, and his physician saw him thereafter at intervals until April 24th, 1931. Suit was started by the plaintiff in his own proper person on February 20th, 1931. At or about the time of his discharge from the hospital the plaintiff began to grow morbid, brooding over his injuries, the loss of his leg, and subsequently he was removed to the City Hospital because of his mental condition. Thereafter he was committed to the state insane asylum by the judge of the Essex County Juvenile Court.

On February 25th, 1931, the judge of the Circuit Court of Essex county appointed Anna Silverstein, plaintiff's wife, to prosecute this action for the plaintiff as his next friend. Counsel for the appellant contends that it was error not to have vacated the order appointing a next friend and stayed the trial until Silverstein was adjudged insane and a guardian appointed for him; that this action, under the circumstances, could not be prosecuted by a next friend.

We cannot agree with the contention that this ground for reversal constitutes reversible error. This action, apparently, was begun upon the plaintiff's own instructions. The suit had been started and issue joined before his disability manifested itself. He had selected his own agent in the person of the attorney to prosecute his case or at least had ratified the selection before he had become mentally unbalanced. So that at the trial, the plaintiff, an alleged lunatic, had his

case presented not only by a next friend but also by an attorney of his own selection. "Lunatics, if under age, must appear by guardian; if of full age, by attorney." 4 *Co. Litt.* 135B. *Bac. Abr.* 47, under the heading, "Idiots and Lunatics," discussing this point, says, "but otherwise of him who becomes *non compos mentis;* for he shall appear by guardian, if within age, or by attorney, if of full age. 4 *Co.* 124b; *Palm.* 520, and 2 *Saund.* 235." In a New York case, *Faulkner* v. *M'Clure,* 18 *Johns.* 134, this practice of a lunatic of full age appearing by attorney has been approved. In this state the practice has been approved in the case of *Van Horn* v. *Hann,* 39 *N. J. L.* 207; *Lutter* v. *Neubauer,* 100 *Id.* 18; *affirmed,* 101 *Id.* 222. See, also, *McArdle Real Estate Co.* v. *McGowan,* 109 *Id.* 595.

The order of the trial court appointing a next friend was unnecessary, but that is all it was. It was not harmful error so as to effect a reversal of the court below. The addition of Mrs. Silverstein to the proceedings as next friend did not add one iota of strength to the plaintiff's case. The defendant could not possibly have been harmed by the fact that she was so appointed. The plaintiff's case was presented by the attorney whom he chose for that task and the fact that the trial court permitted that attorney to prosecute the plaintiff's case, the plaintiff being under the said mental disability, was a recognition of the attorney as a competent and proper person to conduct the litigation, and satisfied the requirements under our practice.

The second ground for reversal urged is that the trial court should have directed a verdict in favor of the defendant Schneider.

This ground is predicated on two propositions. First, Schneider was guilty of no negligence which was the proximate cause of the injuries sustained by the plaintiff and, second, that intervening acts of negligence on the part of the co-defendant, Mann's carriage factory, were the proximate cause of the plaintiff's injury. Obviously, this position is not well taken. From the proofs in the case the jury might have found that the rope used for the towing was old and worn

and by the same token it might have been found that the rope was new. There was testimony each way. Under the testimony, the jury might find that Schneider performed his part of the operation by towing the truck at a fast and reckless speed, passed a stop sign and without slowing for the turn, just as well as it might have found the very opposite to be true. The defendant's witnesses, Biow and Middleton, testified that there was a jolt immediately before the happening, the driver of the truck saying that he expected to stop at the stop sign when in fact there was no stop, and the jury might also have found that the speed of the car in front and the sharpness of the turn lost control of the truck to Middleton with the result that it jumped the curb and injured the plaintiff. These discrepant views of the witnesses could only be determined by the jury and for the court to pass upon them would be a usurpation of the function of the jury. Whether or not the proximate cause of the injuries was the result of the negligent operation of Schneider or of Middleton, as the servants of the Mann's Carriage Factory, Incorporated, or of them both jointly, is a jury question and a verdict will not be directed unless the facts are undisputed and the inference one that is so plain that fair-minded men would not disagree about it. *Podolsky* v. *Sautter,* 102 *N. J. L.* 598.

The next ground for reversal has to do with the trial court's refusal to charge as requested in behalf of the defendant Schneider, as follows:

That the defendant Schneider is not responsible for the condition of the rope furnished by the defendant Mann company, and if the rope furnished was defective, and such defect was the sole proximate cause of the injuries, the verdict should be in favor of Schneider.

The court not only refused this request to charge but did charge that it was the duty of both defendants to exercise reasonable care to see that the rope was suitable for the purpose of towing. The court's charge is a proper one and the objection to it is without merit. It didn't at all lessen the duty of Schneider to use reasonable care as far as the public was concerned because he was towing the truck gratuitously

or as a favor to his friend, Biow. So far as this plaintiff was concerned, Schneider having undertaken the task of towing a broken down truck, it became his duty to exercise a prudence, commensurate with the conditions confronting him. It was clearly a question for the jury as to whether Schneider's conduct was reasonably prudent and the fact that he did not observe the condition of the rope, if that be the fact, does not absolve him from the duty of taking that precaution. Under the facts developed in this case it was not for the court to say or even suggest what was the proximate cause of the happening. The proximate cause is that affirmative act or omission which directly brought about the happening complained of and in the absence of which the happening complained of would not have occurred. What was the proximate cause here—the breaking of the tow rope, the failure of the hydraulic brakes, the jerks and starts of the towing automobile, the undue speed, the sharpness of the right-hand turn—any one or all of these may answer our question, but under our system of jurisprudence it is for the jury to say and the court properly placed it in their hands for determination. The charge of the trial court was comprehensive and proper and laid down for the jury the true, legal guide for its deliberation.

The fourth ground for reversal is that the trial court erred in returning the jury to the court room for additional instructions.

This is rather an unusual reason urged for reversal upon appeal. Apparently, what happened was that the jury, upon its retirement to the jury room, adjacent to the court room, engaged in an animated discussion, the noise of which reached the ears of the court. Thereupon the trial judge sent for the jury and advised the members that their deliberations should be conducted in an orderly manner. Neither litigants nor counsel were present. Manifestly, the court did not return the jury to the court room for the purpose of giving additional instructions with regard to the law or facts of the case and nothing that appears in the record could possibly justify that contention. The court was well within its right in sending

for the jury to impress upon them the necessity for orderly deliberation. It is not error for a judge to call the jury from their room even to give them further instruction in the absence of litigants and counsel for the reason that in contemplation of law the parties and their counsel remain in court until a verdict has been reached or the jury discharged from rendering one. This court so held in the case of *Cooper* v. *Morris,* 48 *N. J. L.* 607.

The next ground of appeal is a supplement to the preceding one and charges that the court committed error in its supplemental "charge" to the jury. Now after the court had advised the jury that its deliberation ought to be conducted in an orderly manner, the court said: "Have you come across any question in your deliberations in which the court can aid you? I will leave here around half past four or a quarter to five and I cannot be of any assistance to you after that until the morning. If there is anything in which I can help you at this time I will be glad to do so by recalling some of the testimony or refreshing your recollection on any proposition of law." The appellant strives to contort this language into an implied threat that the jury would be locked up for the night if it didn't come to an early determination. We cannot agree with the construction sought to be placed upon these words and no authority cited by the appellant would justify us in so doing.

At this juncture, however, one of the jurors asked the court a question and the court discussed that phase of the case which was troubling the juror. That it was not error so to do has been pointed out in the case of Cooper *v.* Morris, cited above. The supplemental charge, and really it wasn't that but discussion only, was later read to counsel so that either side might enter objections if it was deemed necessary, and exceptions were noted.

The appellant contends that had this supplemental discussion taken place in the presence of counsel his rights would be better protected. How either counsel could do any more to protect the rights of the respective parties than by stating their objection on the record when it was later read to them is

not clear. Full and fair opportunity so to do was afforded both sides which is a complete answer to appellant's argument since the supplemental charge, as it is called, is now in this court under review. The appellant further argues that the court by discussing the evidence with members of the jury constituted himself a "thirteenth" juror. The rule as to the court's prerogative in this respect is too well established to require more than passing comment. It is the prerogative of the court to discuss the evidence adduced, so long as it be left to the jury to determine the facts for themselves and to draw their own conclusions therefrom. *Merklinger* v. *Lambert*, 76 *N. J. L.* 806.

These are all of the grounds of appeal that have been argued.

The judgment of the court below therefore is affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ. 13.

*For reversal*—None.