WILLIAM REITER, PLAINTIFF-RESPONDENT, v. MAX MARX COLOR & CHEMICAL CO., DEFENDANT-APPELLANT.

Argued April 11, 1961—Decided May 8, 1961.

*Mr. Francis Sorin* argued the case for plaintiff-respondent.

*Mr. H. Curtis Meanor* argued the cause for defendant-appellant (*Messrs. Lamb, Langan & Blake,* attorneys; *Mr. Arthur J. Blake,* of counsel).

PER CURIAM. In this negligence action the trial court granted defendant's motion for judgment at the close of plaintiff's case. The Appellate Division reversed unanimously. 67 *N. J. Super.* 410 (*App. Div.* 1960). We granted certification. 33 *N. J.* 599 (1960).

Max Cohen Plumbing Co., plaintiff's employer, was engaged by defendant, Max Marx Color & Chemical Co., to replace a water pipe which ran from defendant's factory building to the base of an adjacent water tower. The tower was a wooden affair 20 feet in depth, erected on an iron structure which was 60 feet above the ground. The feed pipe to be replaced extended from the factory parallel to the ground to a point under the tower where it turned upward at a right angle into the bottom of the tank. It protruded into the tank a few inches and was held in place on the inside by a flange or gasket.

On the day of the accident, plaintiff and his fellow employees were dismantling the rotted pipe. They were working on the outside. Plaintiff's foreman instructed him to go into the tank to ascertain how the pipe was fastened to the bottom on the inside. The testimony indicated that it was necessary to "go into the tank to unscrew" the pipe and that it was "part of the job" to do so. In obedience to the order, plaintiff ascended to the top of the tower by means of a metal ladder which was affixed to the outside. On reaching the top, he opened a trap door and looked inside. Except for some inconsequential residue, the water

had either seeped out because of the defective pipe or had been removed. He observed a wooden ladder fastened to the side of the tank and leading to the bottom. The ladder looked all right to him and he used it to descend to the bottom. There he worked around the inside pipe connection for a short time and after completing his inspection he started back up the ladder. When he was three or four rungs from the top, one of the rungs collapsed underneath his left foot, precipitating him to the bottom of the tank, as the result of which he sustained some severe injuries. On regaining consciousness, he examined a piece of the broken ladder and found that it was "all rotted." It felt "rotted like a piece of wood you see on the beach." A co-employee confirmed his statement in this respect. Answers to interrogatories furnished by defendant were to the effect that inspection of the broken pieces of the ladder after the accident revealed that they were rotted. The trial court dismissed the case on the ground that the defendant could not be held liable for injuries resulting from the very hazard which plaintiff's employer was engaged to remedy.

In reversing the judgment, the Appellate Division held on the proof submitted (which it was obliged to consider in the most favorable light to the plaintiff) (1) that plaintiff's injury did not arise out of the very hazard his employer was called on to correct, and (2) there was a jury question as to whether an implied invitation had been extended by defendant to Cohen's workmen to go inside and to the bottom of the tank as an incident of the repair work. We agree with that result. The first ground requires no further discussion. As to the second, we have no doubt that it was for the jury to say under the circumstances disclosed whether defendant knew or reasonably should have known or expected that the contractor's employees would enter and descend to the bottom of the tank in the performance of their tasks. If the jury decided that issue favorably to the plaintiff and if the jury further concluded that it was reasonable for plaintiff to use the interior ladder to get

to the pipe connection at the base of the tank, then obviously the defendant was subject to the ordinary duty imposed by law with respect to invitees on its premises. More specifically, if defendant impliedly invited plaintiff to go inside and examine or work on the pipe connection, and to use the ladder apparently designed to facilitate that inspection, it was under the duty of providing a ladder that was reasonably fit for such use.

Was the ladder reasonably safe for the designed use? It was made of wood and under the defendant's control. The inference may fairly be drawn from the testimony and the answers to interrogatories that it had been inside the tank and under water for a number of years. In the course of the contemplated use, a rung collapsed under plaintiff's weight and the broken wood was found to be rotten. On these facts in our view an inference of want of due care in the maintenance of the ladder can be drawn by a jury whether the legal issue is dealt with in terms of inference of negligence or as one where the doctrine of *res ipsa loquitur* is applicable. *Stark v. Great Atl. & Pac. Tea Co.,* 102 *N. J. L.* 694 (*E. & A.* 1926); *Smith v. Jackson,* 70 *N. J. L.* 183 (*Sup. Ct.* 1903); and see *Kempf v. New York O. & W. Ry.,* 112 *N. J. L.* 118 (*E. & A.* 1934); *Zboyan v. City of Newark,* 104 *N. J. L.* 258 (*Sup. Ct.* 1927).

In *Stark* the plaintiff, a customer in defendant's store, was injured when a splinter broke from a "rotten" board in the floor and caught her foot, causing her to fall. Examination after the accident showed the splinter to be about 18 inches long, about an inch and a half thick and "tapered off." It left a hole or depression in the floor "big enough" for plaintiff's shoe. Defendant argued that in the absence of notice that the floor was rotton, there could be no liability.

The Court of Errors and Appeals, in commenting upon defendant's contention, said:

"But it is equally certain that there are conditions of disrepair and deterioration causing injury which, from their very nature and character, cannot come into existence coincident with the happening,

but must, by more or less slow and gradual processes covering appreciable periods of time, have grown from a condition of reasonable safety to one not safe, as measured by the rule of reasonable care. Such cases would present a question for jury determination as to whether or not the condition had existed for such period of time as to give the party chargeable with the care and maintenance reasonable time and opportunity to inspect and repair, if necessary.

We think the proofs before us present a case of that character and that it was for the jury to determine what the condition of the floor was and if it was not in a reasonably safe condition, then whether, from the facts, condition and state of disrepair, that condition had existed for such space of time prior to the happening complained of as to charge respondent with notice of the condition and afford it a reasonable opportunity to make repairs."

Defendant claims that *res ipsa loquitur* is not available to the plaintiff because it was not pleaded in the complaint, asserted in the pretrial order, or raised until the matter reached this court. We note that the complaint simply charges that defendant was under an obligation of providing plaintiff with a safe place to work, and that it failed to do so as the result of which the tank ladder being used by plaintiff collapsed. This very general allegation obviously would justify reliance on *res ipsa loquitur*. It is true that the pretrial order recites that defendant was negligent because the ladder was defective in material and construction, and was rotted, and that defendant had failed to inspect and repair it. But this specificity does not preclude reliance on the doctrine. *Forsch v. Liebhardt*, 5 *N. J. Super*. 75 (*App. Div.* 1949) ; *Markowitz v. Liebert & Obert*, 23 *N. J. Misc.* 281 (*Sup. Ct.* 1945) ; *Rapp v. Butler-Newark Bus Line*, 103 *N. J. L.* 512 (*Sup. Ct.* 1927), affirmed o. b. 104 *N. J. L.* 444 (*E. & A.* 1928). Appropriate inquiry at the pretrial conference undoubtedly would have eliminated any question about the matter. Moreover, the argument in the trial court on defendant's motion for judgment centered largely around the claim that the defendant owed no duty to the plaintiff with respect to the ladder and the dismissal was granted on that ground. That issue predominated also in the Appellate Division, as the opinion indicates, although

plaintiff's brief there cited *Start v. Great Atl. & Pac. Tea Co., supra*. The viewpoint of the Appellate Division undoubtedly motivated the diffusion of emphasis appearing in the brief in this court, the purpose being to present not only the element of existence of a duty on the part of defendant but more detailed argument on the problem of proof of violation of that duty as well. Under the circumstances, we find no substantial merit in defendant's position.

Accordingly, the order of the Appellate Division remanding the cause for retrial was proper and is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.