70 N.J. Super. 410 (1961)
175 A.2d 651
CHARLES CAHILL, PLAINTIFF-RESPONDENT,
v.
MUNDET CORK CORPORATION, ET ALS., DEFENDANTS, AND CLIFFORD S. EVANS, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1961.
Decided November 16, 1961.
*411 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Robert E. Tarleton argued the cause for appellant (Messrs. Beggans and Keale, attorneys; Mr. James P. Beggans, of counsel; Mr. Tarleton, on the brief).
Mr. Francis Sorin argued the cause for respondent.
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant appeals from a final judgment of the Superior Court of New Jersey, Law Division, Hudson County, entered March 8, 1961 in favor of plaintiff, in the amount of a jury verdict of $30,000; and from an order of the court on March 27, 1961 denying a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial as to all issues.
During the course of his employment, plaintiff fell from a ladder and, as a result thereof, suffered personal injuries. *412 In his complaint for damages, he designated as defendants the Mundet Cork Corporation (owner of the property where the accident occurred), Clifford S. Evans, Inc. (general contractor engaged to enlarge owner's industrial plant), Roswell G. Smith, George C. Smith and Louise C. Smith, trustees for Cynthia Louise Smith, t/a Albert Smith's Sons, and William F. Hegarty, Inc. (subcontractors). There was a voluntary dismissal, with prejudice, on motion of plaintiff as to all defendants except the Evans Company.
In denying liability, appellant maintains: (1) plaintiff exceeded the bounds of his invitation; (2) the proximate cause of the accident was unconnected with appellant's acts or responsibility; and (3) plaintiff, as a matter of law, assumed any risk of danger.
Plaintiff was a foreman for the Concrete Plank Company, a subcontractor engaged by Evans to install a roof on a new building under construction on Mundet's premises. The accident occurred on plaintiff's first day at this work location  March 29, 1957. He and a fellow employee, one Angelo Carbonaro, arrived at the job that morning prepared to proceed with the installation of concrete planks on the steel roof frame of the building  a one story structure, approximately 15 feet high. The structural steel members (consisting of four-inch channel beams) had been erected, and the brickwall work was completed exposing openings for a door and the windows.
The concrete planks had already been delivered to the job site. They were to be raised to the roof of the building by means of a hand derrick. Carbonaro was dispatched by plaintiff to the roof preparatory to hoisting thereto the hand derrick for use in lifting the planks. He made his ascent by way of a "12 or 14" foot ladder "made of 2 x 4's and pieces of wood nailed." This, he found resting against the interior wall of the building to the left of the doorway opening. Upon reaching the roof, he dropped a rope down to plaintiff who tied it to the bottom section of the derrick (this was one of two sections and weighed 80 to 100 pounds), *413 whereupon Carbonaro proceeded to pull it upward. When the derrick section had reached the top of the wall, Carbonaro was unable to lift it over the parapet, which extended approximately two feet higher than the steel beams of the roofline, so he called to Cahill for help. In going to his assistance, Cahill used the same ladder and, together, they lifted the equipment over the parapet resting it on the steel framework. Cahill testified:
"* * * I needed a piece of 2 x 4 to level it off and I was going down  started back and went down the ladder  started down the ladder to get this  * * * Well, when I got on the ladder, I don't recall whether I stepped down one step or two steps, and the ladder started to shake and when the ladder started to shake, I reached out to steady myself and I grabbed hold of this piece of steel and the steel fell down and brushed my arm and knocked me and the ladder down."
This "piece of steel" was a lintel consisting of two steel channels, 8 inches by 10 feet, which were bolted together to form one unit. Its total approximate weight was 380 pounds. The lintel had been removed from an old building on March 19, 1957 and, on the morning of the accident, had been installed in the new building by employees of Evans. James A. Gormley, Jr., who at the time of the mishap was an employee of Evans, testified that two men were working with the lintel that morning and he saw them "hoist the lintel up over the top of the door," after which the men left the area and "there wasn't anybody else around there after that." He said this work had been done approximately 15 minutes before he saw plaintiff (Cahill) on the job. The testimony of Frank Dam, a former superintendent for Evans, was that the lintel rested on the "Bering-Pile lasters [bearing pilasters?], which was to support it" and it "was balanced on the pilasters."
As part of plaintiff's case, certain interrogatories propounded to appellant, and the answers thereto, were read to the jury. The answer to question No. 10 is significant:
*414 "The usual procedure followed in placing a steel beam into position, is by hoisting said beam into position and bolting or welding it into its permanent position. The hoisting and welding is done in one continuous operation until completion."
Thomas J. Connolly, a construction expert and construction engineer, was produced as a witness for plaintiff and gave evidence that, "The standard of steel construction as of  all the steel members that are erected on the building must be immediately tied in or tied down. In other words, they shall not be allowed to remain loose." He defined a "lintel" as "the support that goes over the jamb of a door from one side of the door jamb to the other, or one side of a window to another. In other words, it carries the material above the window opening or above the door opening or the arch opening."
The trial court was convinced that the ownership and control of the ladder had not been established and, accordingly, the jury was instructed to disregard the testimony relating to it. This determination was not challenged by cross appeal and its correctness need not here be considered. The issue of liability was submitted to the jury solely with reference to the lintel.

I.
Plaintiff, an employee of a subcontractor, was on the premises by the implied invitation of the Evans company (general contractor) which was bound to use reasonable care to see that the place where the work was to be performed was reasonably safe. Meny v. Carlson, 6 N.J. 82, 95 (1950). This duty, coextensive with the invitation, was to "exercise ordinary care to render the premises safe for the purposes embraced in the invitation." Terranella v. Union Building and Construction Co., 3 N.J. 443, 448 (1950). See also Murphy v. Core Joint Concrete Pipe Co., 110 N.J.L. 83 (E. & A. 1933). The fundamental principles of law laid down in these cases are not disputed by appellant, who emphasizes the cogent fact that the occupier's liability is *415 circumscribed by the invitation, citing Phillips v. Library Co., 55 N.J.L. 307 (E. & A. 1893). This is a leading authority and has been consistently followed. Vide Ginnelly v. Continental Paper Co., 57 N.J. Super. 480, 489 (App. Div. 1959), certification denied 31 N.J. 293 (1960); Benton v. Y.M.C.A., 27 N.J. 67, 70 (1958); Lokar v. Church of the Sacred Heart, 24 N.J. 549, 552 (1957); Terranella v. Union Building and Construction Co., supra, 3 N.J., at p. 448; Griffin v. De Geeter, 132 N.J.L. 381, 382 (E. & A. 1945).
The settled rule in the Phillips case is clear and beyond question. Our immediate concern is with its application to the factual status peculiar to the instant case. In Nary v. Dover Parking Authority, 58 N.J. Super. 222, 229 (App. Div. 1959), this court noted that the area of invitation "includes those parts of the premises to which the invitee reasonably may be expected to go," citing 38 Am. Jur., Negligence, § 100 (1941); 65 C.J.S. Negligence § 48 (1950); Roy v. Amoskeag Fabrics, Inc., 93 N.H. 324, 41 A.2d 607 (Sup. Ct. 1945). In discussing the subject of "invitation," Prosser on Torts (2d ed. 1955), § 78, p. 458, says: "* * * and it extends to all parts of the premises to which the purpose may reasonably be expected to take him, and to those which are so arranged as to lead him reasonably to think that they are open to him." Stated in another way: "It [the invitation] may extend to such other parts of the premises as may be visited by the invitee for a purpose reasonably incidental to that for which the invitation was extended." 4 Shearman and Redfield on Negligence (rev. ed. 1941), § 779, p. 1787.
The theory advanced by appellant is that plaintiff used the premises in a manner never authorized or intended, and that the accident did not occur within the limits of the invitation. Thus, there is a factual disputation as to the scope of the invitation  an issue ordinarily to be resolved by a jury, the trier of facts. Reiter v. Max Marx Color & Chemical Co., 67 N.J. Super. 410 (App. Div. 1960), affirmed *416 35 N.J. 37, 40 (1961); Williams v. Morristown Memorial Hospital, 59 N.J. Super. 384, 389 (App. Div. 1960); Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 219 (1954); Hendrikson v. Koppers Co., Inc., 11 N.J. 600, 606 (1953); Constantine v. Delaware, L. & W.R.R. Co., 12 N.J. Misc. 518, 172 A. 803 (Sup. Ct. 1934). But see Heuser v. Reilly, 128 N.J.L. 533 (Sup. Ct. 1942), affirmed per curiam (sub nom. Heuser v. Turteltaub) 129 N.J.L. 388 (E. & A. 1943); Ryerson v. Bathgate, 67 N.J.L. 337 (E. & A. 1902); Annotation 31 A.L.R.2d 1375, 1402.
We are mindful of the opinion by Judge (now U.S. Supreme Court Justice) Brennan in Layton v. Moseley, 16 N.J. Super. 124 (App. Div. 1951) and the case of New York and New Jersey Telephone Co. v. Speicher, 59 N.J.L. 23 (Sup. Ct. 1896), affirmed per curiam 60 N.J.L. 242 (E. & A. 1897), therein mentioned. In Layton the plaintiff, a carpenter engaged in repairing a roof, was injured when he grabbed a chimney in order to aid his passage while crossing the roof. The court sustained a judgment of involuntary dismissal finding that "no invitation to use the chimney in that fashion can be inferred from the facts." In the Telephone Company case, it was established that the lower two cross-bars attached to a telegraph pole were for the company's wires. The City of Jersey City used the topmost cross-bar attached to the same pole to carry its wires for a fire-alarm system. It was held that the invitation to the lineman (employee of the city) to use the pole extended only to the pole, and that the company owed no duty to the city employee with respect to the cross-bars carrying the telephone company's wires. The plaintiff in each of these situations voluntarily exposed himself to a danger which it might be inferred lay beyond the strict boundary lines demarcated by the invitation. The evidence adduced in these respective cases is distinguishable from that in the litigation sub judice, and we find it unnecessary to approve or disapprove of the judicial conclusions there reached. We note, however, that the Layton case has not been cited with approval *417 in any of the subsequent reported decisions of our appellate courts.
The general contractor was in possession and control of the building under construction. The brick walls and steel framework were in readiness for a concrete roof enclosure. There were no stairs or steps to the roof area; it was accessible by means of a ladder. The record is barren of any limitations upon the use of the walls or structural elements of the building or any part thereof. The roof spanning the entire building necessarily involved tie-in work around and within the perimeters of the walls. The subcontractor, and its employees, had the right to assume that the structural parts of the building and the area of the walls extending to the roof were reasonably safe.
Appellant further urges that the court's instructions to the jury were incomplete and constituted reversible error in that:
"The jury was not instructed that no liability could be imposed on defendant under these circumstances if they found that plaintiff exceeded the scope of the invitation, or that the invitation did not extend to that portion of the premises where plaintiff sustained his injury, or that plaintiff had no reason to believe that the lintel was within the invitation extended to him."
We have considered the totality of the charge, and we are satisfied that this contention is not well-founded. The court expanded upon the law respecting the "area of invitation" consistent with the pronouncements in Gudnestad v. Seaboard Coal Dock Co., supra. If the jury found that defendant's invitation had not been extended to the lintel, the jury was sufficiently apprised that no consequent duty was then owing to plaintiff. "A party to an action is not entitled to have the jury charged in words of his own choosing, and, when the charge as a whole clearly and correctly states the principles of law pertinent to the issues in the case, there is no error in this respect." Batts v. Joseph Newman, Inc., 3 N.J. 503, 511 (1950); Leone v. Rutt's Hut, Inc., 55 N.J. *418 Super. 485 (App. Div. 1959); State v. Juliano, 103 N.J.L. 663 (E. & A. 1927).
It is our considered judgment that the issue as to the area of invitation was properly submitted to the jury.

II.
The thrust of appellant's contention as to proximate cause is that when plaintiff lowered himself onto the top crosspiece of the ladder he had one hand on a roof beam above the ladder and, when he descended to the second cross-piece, he let go of the beam to grasp the ladder and, in so doing, the ladder shifted and plaintiff lost his balance and fell backwards. Appellant maintains that plaintiff was precipitated into a fall before reaching for the lintel, and that the dislodgment of the lintel was a mere incident to the inevitable fall. Such an inference could be adduced from the version of the accident as stated by Carbonaro, but ignores the testimony of plaintiff that:
"* * * I reached out to steady myself and I grabbed hold of this piece of steel and the steel fell down and brushed my arm and knocked me and the ladder down."
and re-emphasized under cross-examination:
"Q. As a matter of fact, the ladder was on its way when you grabbed this piece of steel; isn't that so?
A. Well, as I say, I don't know whether it was on its way falling, but it wobbled back and forth and I lost my balance a little bit and I grabbed for the steel.
Q. Now, this piece of steel merely grazed your arm and fell to the ground; isn't that so?
A. Yes, it did. It grazed my arm and knocked me loose from holding onto the ladder. My other arm pulled me back."
If the jury believed Carbonaro, they could have found that plaintiff was already in the air destined to his injuries when he grabbed for the lintel. On the other hand, by accepting plaintiff's testimony, the jury could have concluded that the lintel was used for intended support, and if it had been *419 properly installed he could have protected himself against injury.
Defendant was not unlawfully prejudiced by the testimony of Connolly, an expert witness produced by plaintiff. Connolly's qualifications as a construction engineer were not questioned, and his testimony was predicated upon extensive experience in the building industry. He testified from professional experience as to custom and usage in the construction trade that "all the steel members that are erected on the building must be immediately tied in or tied down." Hypothetical questions, under such circumstances, would not be essential. See Rogers, Expert Testimony (3d ed. 1941), § 8, p. 16; 7 Wigmore, Evidence, § 2053, p. 309; Guzzi v. Jersey Central Power & Light Co., 12 N.J. 251, 256 (1953). Cf. Beam v. Kent, 3 N.J. 210 (1949).
In Silverstein v. Schneider, 110 N.J.L. 239, 244 (E. & A. 1933), proximate cause was said to be "that affirmative act or omission which directly brought about the happening complained of and in the absence of which the happening complained of would not have occurred." See Batts v. Joseph Newman, Inc., supra, 3 N.J., at p. 509; Kelson v. Public Service R.R. Co., 94 N.J.L. 527 (E. & A. 1920); Batton v. Public Service Corporation of N.J., 75 N.J.L. 857 (E. & A. 1908).
The statement of this court in Altomare v. Cesaro, 70 N.J. Super. 54 (App. Div. 1961), is here applicable:
"The substantial factor doctrine, in recent years, has been recognized and applied repeatedly in the judicial opinions in our State. See Melone v. Jersey Central Power & Light Co., supra (30 N.J. Super., at p. 105); Hartman v. City of Brigantine, 42 N.J. Super. 247, 261 (App. Div. 1956), affirmed 23 N.J. 530 (1957); Martin v. Bengue, Inc., 25 N.J. 359, 374 (1957); Rappaport v. Nichols, 31 N.J. 188 (1959); Avedisian v. Admiral Realty Corp., 63 N.J. Super. 129, 135 (App. Div. 1960); Della Cerra v. Burns, 69 N.J. Super. 110, 118 (App. Div. 1961). See, also, Prosser on Torts (2d ed. 1955), § 47, p. 256. The precise occurrence of injury need not be foreseen by a tortfeasor `so long as it can be said that the injury was the natural and probable consequence of the wrongful act and that it was within the realm of foreseeability that some harm might *420 result to the plaintiff.' Hartman v. City of Brigantine, supra (42 N.J. Super., at p. 262). Accord, Millman v. United States Mortgage & Title Guaranty Co., 121 N.J.L. 28, 36 (Sup. Ct. 1938); Bacak v. Hogya, 4 N.J. 417, 424 (1950); Mitchell v. Friedman, supra (11 N.J. Super., at p. 348); Glaser v. Hackensack Water Co., supra (49 N.J. Super., at p. 598). The decisions dealing with the relativity of causation in tort cases are manifold, and no helpful purpose would be served by attempting to assemble or analyze them here. Suffice it to refer to Judge Conford's observation in Avedisian v. Admiral Realty Corp., supra (63 N.J. Super., at p. 134) that the rule of `intervening causes' is a concept having no independent usefulness in determining the scope of responsibility for consequences of negligent conduct. Ordinarily, proximate and intervening causes are questions for the jury. Martin v. Bengue, Inc., supra (25 N.J., at p. 374)."
When Dionysius suspended the naked sword by a single hair over the head of Damocles, he (Damocles) at least knew of the dangerous and tenuous circumstances; but here we have a 380-pound lintel, "balanced" on pilasters, loose and unattached, without any warning of impending danger to the workmen in or about the immediate area. Such a condition of danger was within the realm of foreseeability, as much so as the unguarded well in the Phillips v. Library Co. case, supra, therein characterized as "something in the nature of a trap." If the plaintiff had reached for the wall to steady the ladder when "it started to shake" or "wobbled" and the wall had caved in or crumbled, thereby resulting in an accident, such defective construction in the edifice could well be considered a "substantial factor" in the causation of an accident. Similar logic would apply with equal force to circumstances where a workman who, in the lawful use of a wall for access to a roof, reached toward and relied for support upon a steel beam over a doorway forming an integral and supporting part of the structural wall, only to encounter its dislodgment and its contribution to an impending fall which might otherwise have been avoided.
The proofs presented constitute more than a mere scintilla of evidence to support a verdict. Long v. Landy, 35 N.J. 44 (1961), and the line of cases it typifies is factually distinguishable.

*421 III.
We shall not dwell at length upon the argument that plaintiff, as a matter of law, assumed the risk of danger. In its primary sense, this defense negates the existence of a legal duty by plaintiff to the defendant; otherwise, it is merely a concept of contributory negligence. "Some have claimed that generally speaking the term assumption of risk adds nothing to the law but confusion, and that it should be abandoned. James, Assumption of Risk, 61 Yale L.J. 141, 169 (1952); Editorial, Assumption of Risk  a False Issue, 73 N.J.L.J. 346 (1950)." Klinsky v. Hanson Van Winkle Munning Co., 38 N.J. Super. 439, 443 (App. Div. 1955), certification denied 20 N.J. 534 (1956). See Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44 (1959). In Berger v. Shapiro, 30 N.J. 89, 102 (1959), our Supreme Court held:
"This court has repeatedly said that contributory negligence is ordinarily for the jury, and that in order to justify a judgment as a matter of law on that ground, the contributory negligence of the plaintiff must appear conclusively as a fact or as a necessary and exclusive inference that would be drawn by all reasonable men."
This court recently stated, in Gottfried v. Temel's Restaurant, Inc., 69 N.J. Super. 163, 165 (App. Div. 1961), that, "If reasonable men could differ as to whether negligence had been shown, the case should be submitted to the jury for determination."
Whether the lintel was a "substantial factor" in causing the accident and its resultant injuries to plaintiff was clearly a factual issue for resolution by the jury. It was within its province to weigh the evidence and determine the credibility of the witnesses. When we assay the record, we cannot conclude that it clearly and unequivocally appears that the action of the trial judge in denying defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial as to all issues resulted in a manifest denial *422 of justice under the law. Hartpence v. Grouleff, 15 N.J. 545, 549 (1954).
Judgment affirmed.