685 A.2d 32

SAMUEL MONHEIT AND RACHEL MONHEIT, HUSBAND AND WIFE, PLAINTIFFS–APPELLANTS/CROSS–RESPONDENTS, v. AARON ROTTENBERG AND KED MAI, INC., DEFENDANTS–RESPONDENTS/CROSS–APPELLANTS, AND LAWRENCE PARK HOMEOWNERS ASSOCIATION; LAWRENCE PARK DEVELOPMENT COMPANY; K & G MASON, INC.; ABC MAINTENANCE CO.; AND JOHN DOE(S) 1–10, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued November 7, 1996—Decided November 27, 1996.

Before Judges SHEBELL, BAIME and LEVY.

*Charles A. Cerussi* argued the cause for appellants/cross-respondents (*Giordano, Halleran & Ciesla,* attorneys; *David P. Corrigan,* of counsel and on the brief; *Mr. Cerussi,* on the brief).

*Eli L. Eytan* argued the cause for respondents/cross-appellants (*Mauro C. Casci,* attorney; *Mr. Eytan,* on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

Plaintiff Samuel Monheit was injured when he fell while inspecting a partially constructed townhouse in a development in which he was about to purchase a unit. The developer, Aaron Rottenberg, trading as Ked Mai, Inc., expressly had invited plaintiff onto the property to determine what features he wished to have incorporated into his future residence. However, an employee of K & G Masons, Inc. who was working at the site warned plaintiff not to enter the structure because the mason was digging drainage pits in the basement. Plaintiff disregarded this warning and fell into a drainage hole. Plaintiff brought suit to recover damages for the injuries sustained, and his wife sued for loss of consortium. The jury found that plaintiff was thirty-five percent negligent, Rottenberg and Ked Mai were forty-five percent negligent, and K & G Mason, Inc. was twenty percent negligent. The jury awarded plaintiff gross damages of $50,000 but rejected his wife's *per quod* claim. Plaintiffs moved for a new trial on damages only or for an additur. Defendant cross-moved for a judgment notwithstanding the verdict or for a new trial on liability

only. The trial court granted Rottenberg's motion in his individual capacity, but denied the remaining applications. Plaintiffs appeal, contending that the jury's award was inadequate. Ked Mai cross-appeals, arguing that the trial court erred by refusing to submit to the jury the question whether plaintiff was a trespasser at the time of the accident. We affirm.

## I.

We need not recount the facts at length. In October 1990, plaintiff and Rottenberg engaged in negotiations for the purchase of a townhouse in one of Ked Mai's developments. The Monheits and Rottenberg were members of the same Orthodox Hasidic Community. It soon became apparent that a sale would be consummated. At Rottenberg's behest, the Monheits visited the construction site on several occasions in early November. Rottenberg would typically meet the Monheits at the site and personally show them the different units. Access to the unfinished units was either by way of a ladder through a space corresponding to the front door or down the basement steps.

Plaintiff and Rottenberg met sometime between November 14 and November 16, 1990. Although a contract had not been signed, Rottenberg wanted the Monheits to examine the unfinished units to determine exactly what features they wished to have incorporated into their future residence. Rottenberg noted that there were workers at the site and invited the Monheits to inspect the property "at noontime" on the following day.

Although the evidence was somewhat conflicting, it appears that Gene Applegate, the principal of K & G Mason, was at the construction site when plaintiff arrived at the appointed hour. Applegate was in the process of preparing drains in the cellar of each townhouse. This involved digging a hole two feet wide and two feet deep at the bottom of each basement stairway, placing black paper in each of the holes, and securing a lining to prevent the paper from rising. Although in the past Rottenberg had instructed Applegate to "chase [people] away" from the site when

the holes were being excavated, Applegate was not sure that he had been given that authority on the date of the accident. In any event, Applegate warned plaintiff not to enter the unit because there was a "pit" in the cellar. However, plaintiff disregarded that warning, walked down the basement stairs and fell into the drainage hole, fracturing his right knee cap.

At trial, Ked Mai requested that the question of plaintiff's status on the property be submitted to the jury and that the jury be informed of the minimal degree of care owed by a landowner to a trespasser. The trial court found as a matter of law that plaintiff was a business invitee. In its charge, the trial court stated an owner of land "has the duty to exercise ordinary care to render the premises reasonably safe for the invitee for the purposes for which he comes on the premises." The court added that "[w]here the owner knows of an unsafe condition, he may satisfy his duty by correcting the condition or, in those circumstances where it is reasonable to do so, by giving warning to the invitee [respecting] the unsafe condition." The jury was further instructed it was its responsibility to "determine whether the warning given was adequate to meet the duty owed to the invitee," and in making that determination, it was to "consider the nature of the defect or unsafe condition, the prevailing circumstances and the likelihood that the warning given would be adequate to call attention to the invitee of the hazard and of the need to protect himself against such hazard."

It is against this factual backdrop that we consider the issues raised.

## II.

We first consider the questions raised by the cross-appeal. The traditional common law approach to landowner tort liability toward a person who has been injured on private property is predicated on the status of the individual injured. Historically, the duty of the owner is gauged by the right of the injured person to be on the land. That status is determined by which of three

classifications applies to the entrant, that of a business invitee, licensee, or trespasser. *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 433, 625 *A.*2d 1110 (1993) (citing *Snyder v. I. Jay Realty Co.,* 30 *N.J.* 303, 311, 153 *A.*2d 1 (1959)). An owner owes a higher degree of care to the business invitee because that person has entered the property by express or implied invitation and for the purposes of the owner which are often commercial or business related. A lesser degree of care is owed to a social guest or licensee, whose purpose in being on the land may be personal as well as for the owner's benefit. The owner owes a minimal degree of care to a trespasser "who is 'neither invited, suffered, nor privileged' to be on another's property." *Handleman v. Cox,* 74 *N.J.Super.* 316, 325, 181 *A.*2d 366 (App.Div.), *aff'd,* 39 *N.J.* 95, 187 *A.*2d 708 (1963) (quoting *State v. Wouters,* 71 *N.J.Super.* 479, 486, 177 *A.*2d 299 (App.Div.1962)); *see also Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* at 433, 625 *A.*2d 1110; *Snyder v. I. Jay Realty,* 30 *N.J.* at 311–12, 153 *A.*2d 1; *Taneian v. Meghrigian,* 15 *N.J.* 267, 271, 104 *A.*2d 689 (1954); *Russell v. Merck & Co.,* 211 *N.J.Super.* 413, 417, 511 *A.*2d 1247 (App.Div.1986); *Caroff v. Liberty Lumber Co.,* 146 *N.J.Super.* 353, 357–58, 369 *A.*2d 983 (App.Div.), *certif. denied,* 74 *N.J.* 266, 377 *A.*2d 671 (1977).

While these principles may be articulated with disarming ease, their application to concrete factual situations often creates difficulties. These categories are not hermetically sealed, watertight compartments, and sometimes the status of the person who is injured on another's property is fluid or otherwise defies definition. It has been said, for example, that the "liability of an inviter is circumscribed by the invitation, and does not extend to invitees whose injuries are received while using the premises not within the limits of the invitation." *Liveright v. Max Lifsitz Furniture Co.,* 117 *N.J.L.* 243, 244, 187 *A.* 583 (E. & A.1936); *see also Gudnestad v. Seaboard Coal Dock Co.,* 15 *N.J.* 210, 219, 104 *A.*2d 313 (1954); *Hendrikson v. Koppers Co., Inc.,* 11 *N.J.* 600, 606, 95 *A.*2d 710 (1953); *Murphy v. Core Joint Concrete Pipe Co.,* 110 *N.J.L.* 83, 87, 164 *A.* 262 (E. & A.1933); *Keller v. Frank Kull, Inc.,* 165 *N.J.Super.* 258, 264, 398 *A.*2d 106 (App.Div.1978); *Cartan v.*

*Cruz Constr. Co.,* 89 *N.J.Super.* 414, 420, 215 *A.*2d 356 (App.Div. 1965); *Cahill v. Mundet Cork Corp.,* 70 *N.J.Super.* 410, 414, 175 *A.*2d 651 (App.Div.1961), *certif. denied,* 36 *N.J.* 302, 177 *A.*2d 343 (1962); *Scheri v. De Paolo,* 68 *N.J.Super.* 297, 303, 172 *A.*2d 233 (App.Div.1961); *Ginnelly v. Continental Paper Co.,* 57 *N.J.Super.* 480, 489, 155 *A.*2d 154 (App.Div.1959), *certif. denied,* 31 *N.J.* 293, 157 *A.*2d 363 (1960). We have also observed that one who enters upon land by the owner's consent may "subsequently abuse[ ] his license ... and become a trespasser by committing active and positive acts not included in the terms" of the invitation. *Cartan v. Cruz Constr. Co.* 89 *N.J.Super.* at 420, 215 *A.*2d 356. In many cases, it is a relatively simple task to determine whether the injured person used the property in an unauthorized manner, or acted in a way that is inconsistent with the permission granted. So too, the area of invitation is often clearly delineated, and the landowner's duty, coextensive with the invitation, is easily defined. But there are cases in which the status of the injured party is amorphous and the uncertainty beclouds the metes and bounds of the invitation. As a general proposition, questions pertaining to the scope of invitation and whether the entrant has exceeded that which is authorized are within the jury's domain. *See Gudnestad v. Seaboard Coal Dock Co.,* 15 *N.J.* at 219, 104 *A.*2d 313; *Murphy v. Core Joint Concrete Pipe Co.,* 110 *N.J.L.* at 87, 164 *A.* 262.

Ked Mai seeks to invoke these rules, contending that plaintiff ventured beyond the bounds of the invitation. We reject this contention because we are in accord with the trial court's conclusion that plaintiff was a business invitee as a matter of law. Plaintiff was invited onto the property to further the business purposes of the developer. Clearly, the area of invitation "includ[ed] those parts of the premises to which the invitee reasonably [might] be expected to go." *Cahill v. Mundet Cork Corp.,* 70 *N.J.Super.* at 415, 175 *A.*2d 651 (quoting *Nary v. Dover Parking Auth.,* 58 *N.J.Super.* 222, 229, 156 *A.*2d 42 (App.Div.1959)). In a somewhat similar context, we have said that the scope of an invitation "extends to all parts of the premises to which the

purpose may reasonably be expected to take [the invitee], and to those which are so arranged as to lead him reasonably to think that they are open to him." *Ibid.* (quoting *Prosser on Torts* (2d ed.1955) § 78 at 458).

We recognize the tendency of several of our earlier decisions to narrowly construe the contours of an invitation for determining whether an injured party was a business invitee at the time of the accident. In *Layton v. Moseley*, 16 *N.J.Super.* 124, 84 *A.*2d 14 (App.Div.1951), for example, plaintiff, a carpenter engaged in repairing a roof, was injured when he grabbed a chimney in order to aid his passage while crossing the roof. We held that "the invitation did not extend to the use of the chimney," and affirmed a judgment of involuntary dismissal. *Id.* at 127, 84 *A.*2d 14. A similar result was reached in *New York and New Jersey Tel. Co. v. Speicher*, 59 *N.J.L.* 23, 39 *A.* 661 (Sup.Ct.1896), *aff'd*, 60 *N.J.L.* 242, 41 *A.* 1116 (E.& A. 1897). There, the former Supreme Court concluded that a linesman repairing fire alarm wires on the topmost cross-bar exceeded the invitation when he used the lower two cross-bars to descend the pole and one gave way, causing him to fall. *Id.* at 24, 39 *A.* 661.

We doubt the continued efficacy of these decisions. We note the mounting criticism levelled against the "rigid constructs of the early common law," *Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* at 437–38, 625 *A.*2d 1110, which often "obscure rather than illuminate the proper considerations [that] should govern determination of the question of duty." *Rowland v. Christian*, 69 *Cal.*2d 108, 70 *Cal.Rptr.* 97, 443 *P.*2d 561, 568 (1968). The evolution toward a more resilient approach "has been gradual but perceptible." *Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* at 436, 625 *A.*2d 1110. In light of this evolution, the inquiry should not focus entirely on what common law classification or amalgam of classifications is technically applicable. Instead, we should look to the actual relationship of the parties under all of the surrounding circumstances.

Within this analytical framework, we are concerned here with a broad invitation extended by a mass producer of development homes. *Cf. Schipper v. Levitt & Sons, Inc.*, 44 *N.J.* 70, 207 *A.*2d 314 (1965). We stress that plaintiffs' prior dealings were with Rottenberg, not Applegate. It was Rottenberg who, on prior occasions, invited the Monheits to the site. When accompanied by Rottenberg, plaintiff had entered the unfinished townhouses in the same way he sought access on the day of the accident. To argue that plaintiff was a trespasser and, therefore, Rottenberg assumed only a minimal duty to protect him from harm under these circumstances ignores the reality of the situation. We do not suggest that plaintiff was entitled to ignore Applegate's warning. But, it was certainly foreseeable that plaintiff would attempt to gain access to the townhouse in light of all that Rottenberg said and did. *Cf. Jurado v. Western Gear Works*, 131 *N.J.* 375, 385, 619 *A.*2d 1312 (1993); *Brown v. United States Stove Co.*, 98 *N.J.* 155, 165, 484 *A.*2d 1234 (1984). Plaintiff's fault in ignoring Applegate's warning was certainly factored into the jury's decisions respecting comparative negligence. We find no error in the approach adopted by the trial court or in the result reached.

## III.

Turning to the principal appeal, we discern no sound basis to disturb the jury's award of damages. In deciding whether the quantum of damages assessed by the jury was inadequate, the trial court was bound to consider the evidence in the light most favorable to the defendants. *Caldwell v. Haynes*, 136 *N.J.* 422, 432, 643 *A.*2d 564 (1994); *Baxter v. Fairmont Food Co.*, 74 *N.J.* 588, 597, 379 *A.*2d 225 (1977); *Taweel v. Starn's Shoprite Supermarket*, 58 *N.J.* 227, 236, 276 *A.*2d 861 (1971). In reviewing the trial court's decision, we may not reverse "unless it clearly appears that there was a miscarriage of justice under the law." *R.* 2:10-1. "The standard for appellate review of [the] trial court's decision on [the] motion for a new trial is substantially the same as that controlling the trial court except that due deference should be

made to its 'feel of the case' including credibility." *Feldman v. Lederle Labs.*, 97 *N.J.* 429, 463, 479 *A.*2d 374 (1984) (quoting *Dolson v. Anastasia*, 55 *N.J.* 2, 7, 258 *A.*2d 706 (1969)).

■ Applying these principles, we cannot fairly say that the damages assessed by the jury were so "disproportionate to the injury and resulting disability shown as to shock [the] conscience" and to convince us that "to sustain the award would be manifestly unjust." *Baxter v. Fairmont Food Co.*, 74 *N.J.* at 596, 379 *A.*2d 225. The evidence suggested that at least part of plaintiff's disability was not attributable to the injuries sustained in his fall. As to the *per quod* claim, the jury reasonably could have found incredible portions of plaintiff's and his wife's testimony regarding plaintiff's involvement in household chores. In any event, we find no reason to intervene.

Accordingly, the Law Division's judgment is affirmed.