92 N.J. Super. 105 (1966)
222 A.2d 290
JACK ZENTZ, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
CHARLES S. TOOP AND MARION TOOP, HUSBAND AND WIFE, INDIVIDUALLY, JOINTLY AND/OR D/B/A LINCROFT SHOPPING CENTER, DEFENDANTS-RESPONDENTS AND THIRD-PARTY PLAINTIFFS, CROSS-APPELLANTS,
v.
NATHAN SIEGEL, THIRD-PARTY DEFENDANT AND CROSS-RESPONDENT, AND FRANK CORDASCO ET AL., THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1965.
Decided July 27, 1966.
*107 Before Judges GAULKIN, LABRECQUE and BROWN.
Mr. Vincent D. Enright, Jr. argued the cause for plaintiff-appellant Jack Zentz (Messrs. Harth & Enright, attorneys).
Mr. Baruch S. Seidman argued the cause for defendants and third-party plaintiffs Charles S. Toop and Marion Toop as respondents and cross-appellants (Messrs. Burton, Seidman & Burton, attorneys).
Mr. Marshall Selikoff argued the cause for third-party defendant and cross-respondent Nathan Siegel (Messrs. Jung & Selikoff, attorneys).
*108 The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff appeals from a judgment n.o.v. entered in the Law Division in favor of defendants Charles S. Toop and Marion Toop following a jury verdict in favor of plaintiff. The Toops cross-appeal from a judgment entered upon a verdict in favor of third-party defendant Siegel absolving him from liability for plaintiff's injuries.
Plaintiff sued the Toops, owners and operators of the Lincroft Shopping Center, for personal injuries sustained when he fell on the roof of the shopping center after tripping over a wire on the roof. He had been working there as an employee of a contractor engaged by defendants to make repairs to the roof. The wire in question was one of several being used to support and stabilize an air conditioner tower located on the roof of the building.
Defendants filed a third-party complaint naming as defendants three of the tenants maintaining air conditioner towers on the roof of their shopping center (Cordasco, Siegel, Viona), and an air conditioning contractor (P. & L. Company). At the trial judgments of dismissal were entered in favor of the air conditioning contractor and two of the tenants (Cordasco and Viona), and the liability of Siegel, the remaining tenant, was left for determination by the jury.
In response to specific interrogatories the jury unanimously determined that (1) the Toops were guilty of negligence which proximately resulted in plaintiff's injuries; (2) plaintiff was not guilty of contributory negligence, and (3) Siegel, the tenant, was not guilty of negligence. Damages were fixed at $18,975.
The trial judge subsequently granted defendant's motion for judgment n.o.v. The present appeals followed.
At the pretrial defendants admitted ownership and control of the premises, including the roof of the building, but denied negligence and charged that the third-party defendants were responsible for maintaining the air conditioning units and the wires attached thereto. Siegel admitted that he was the tenant of the building and that he had had the *109 air conditioner tower in question installed over his hardware store, but denied any duty to plaintiff as to the condition of the roof.
The work for which defendant had contracted with plaintiff's employer consisted of the application of tar paper, flashing paper and hot asphalt (tar) to the roof. Previous to the accident a representative of plaintiff's employer (not plaintiff) had gone on the roof with Mr. Toop and examined its condition. The accident occurred on the day after the work was actually begun.
As part of his job plaintiff was required to be on the roof and to carry five-gallon buckets of hot asphalt from a derrick to the working area where it was to be applied. Another employee on the ground would heat the asphalt to a temperature of approximately 425° and then hoist it to the roof by means of the derrick.
Plaintiff testified that as he was in the process of carrying two buckets of tar weighing 25 pounds apiece across the roof and had walked 12 or 15 feet, he tripped over a guy wire which was strung between the top of the four-foot air conditioner tower and the roof surface, and fell into the hot tar. He fell over the part of the wire closest to the roof level, at a point where it was between one and six inches above the roof. Both the wire and the surface of the roof were black, and there were no flags or other means to call attention to the wire.
Plaintiff further testified that while he had encountered wires on the roof on one or two prior jobs, they had been flagged and he had never known them to be on air conditioner towers. He, however, admitted that, on the day before, he had noticed there were some wires on the roof near an air conditioner tower, although he did not recall seeing the wire which tripped him. The application of the hot tar did not begin until the day of the accident, and he was carrying the first two buckets when the accident occurred.
Plaintiff called a civil engineer as an expert witness. He testified that standard construction practice required that *110 the presence of the wires on the roof be delineated either by flagging or by painting them a distinctive color; that such procedure was employed "to prevent a tripping hazard." He also stated that guy wires were unusual in the case of permanent structures such as the one involved, and that in his experience their use was to support temporary structures.
Defendants' arrangement with plaintiff's employer called for repairing the roof over Siegel's hardware store as well as other adjacent stores. Under the leases in effect defendants were obligated to keep the roof in repair. However, the tenants took care of their own air conditioning units.
Poling, a partner in P. & L. Company, who had installed the Siegel air conditioner tower, stated that when installed it was attached to the roof by four guy wires of "bright galvanized metal," silver in color. He stated that it was his practice  as well as standard construction practice  to use a wire that would "stand out" in color from the color of the roof surface. He testified further:
"Q. Is it a deviation from standard practice to have a wire which is the same color as the surface of the roof?
A. For me it would be, yes."
He conceded that after a period of time the original color of the wire he had installed would change to a darker shade.
Photographs were received in evidence on which plaintiff pointed out the air conditioner tower involved and the supporting guy wire over which he had tripped. The tower was located over the Siegel store. There was no such structure over the Viona pharmacy. While there was some testimony as to a second tower over the Cordasco barber shop, there was no proof that plaintiff had been working in that area.
The Siegel tower was located some 10 or 12 feet from the rear edge of the roof and 10 feet from the parapet which separated the building in which the Siegel store was located from the adjacent building occupied by the post office, a dentist's office and a luncheonette. Plaintiff had been walking *111 from the rear of the roof towards the front, apparently in a diagonal direction to the right, when he fell.
Plaintiff urges that the issues of negligence, causal relation and contributory negligence were properly submitted to the jury and that the entry of judgment n.o.v. was in error. Defendants contend to the contrary and further urge that, should the granting of the motion for judgment n.o.v. be found to be erroneous, there should be a new trial as to all issues or, alternatively, a new trial of the third-party action against Siegel.
Our consideration of the opinion of the trial judge in granting defendants' motion for judgment n.o.v. leaves us in doubt as to whether it was premised upon the absence of negligence on defendants' part or upon plaintiff's contributory negligence. We therefore proceed to a consideration of both issues.
Plaintiff, as an employee of a contractor performing work on the roof, was an invitee of defendants, to whom they owed the duty of exercising reasonable care to render the area where the work was to be done reasonably safe for its performance. Hardman v. Ford Motor Co., 70 N.J. Super. 275, 285 (App. Div. 1961), certification denied 36 N.J. 299 (1962). Their duty included the obligation of making a reasonable inspection to discover defective and hazardous conditions. Handleman v. Cox, 39 N.J. 95, 111 (1963); Stark v. Great Atlantic and Pacific Tea Co., 102 N.J.L. 694 (E. & A. 1926).
Defendants, while conceding this to be the general law, urge that their duty to plaintiff would have been satisfied by warning him of the presence of the guy wires on the roof, and that they were relieved of that obligation by the fact that their presence was obvious, and plaintiff, by reason of his prior work on the roof, had knowledge or was chargeable with knowledge thereof.
The suggestion that a landowner could satisfy his obligation to an invitee on his premises in all cases by giving warning of the presence of a dangerous condition was set forth in *112 Restatement, Torts, § 343, p. 938 (1934). It has been frequently criticized. Thus, in 2 Harper and James, Torts, § 27.13, pp. 1489-93 (1956), the authors commented:
"Once an occupier has learned of dangerous conditions on his premises, a serious question arises as to whether he may  as matter of law under all circumstances  discharge all further duty to his invitees by simply giving them `a warning adequate to enable them to avoid the harm.' A good many authorities, including the Restatement, take the position that he may. But this proposition is a highly doubtful one both on principle and authority. The alternative would be a requirement of due care to make the conditions reasonably safe  a requirement which might well be satisfied by warning or obviousness in any given case, but which would not be so satisfied invariably. * * *
* * * If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight. This is true of the flight of ordinary stairs in a usual place in the daylight. It is also true of ordinary curbing along a sidewalk, doors or windows in a house, counters in a store, stone and slopes in a New England field, and countless other things which are common in our everyday experience. It may also be true of less common and obvious conditions which lurk in a place where visitors would expect to find such dangers. The ordinary person can use or encounter all of these things safely if he is fully aware of their presence at the time. And if they have no unusual features and are in a place where he would naturally look for them, he may be expected to take care of himself if they are plainly visible. In such cases it is enough if the condition is obvious, or is made obvious (e.g., by illumination). * * *
On the other hand, the fact that a condition is obvious  i.e., it would be clearly visible to one whose attention was directed to it  does not always remove all unreasonable danger. It may fail to do so in two lines of cases. In one line of cases, people would not in fact expect to find the condition where it is, or they are likely to have their attention distracted as they approach it, or, for some other reason, they are in fact not likely to see it, though it could be readily and safely avoided if they did. There may be negligence in creating or maintaining such a condition even though it is physically obvious; slight obstructions to travel on a sidewalk, an unexpected step in a store aisle or between a passenger elevator and the landing furnish examples. Under the circumstances of any particular case, an additional warning may, as a matter of fact, suffice to remove the danger, as where a customer, not hurried by crowds or some emergency, and in possession of his faculties, is told to `watch his step' or `step up' at the appropriate time. When this is the case, the warning satisfies the requirement of due care and is incompatible with defendant's negligence. Here again, plaintiff's recovery would be prevented by *113 that fact no matter how careful he was. But under ordinary negligence principles the question is properly one of fact for the jury except in the clearest situations." (Emphasis added)
Section 343 has since been rewritten, Restatement, Torts 2d, § 343, pp. 215-16 (1965), and now reads:
"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger."
It is to be read in connection with section 343A(1), which deals with conditions known to the invitee or obvious to him and reads:
"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."
Subparagraph (c) above, in its original form, had set forth the landowner's obligation in terms of either making the condition reasonably safe or giving warning adequate to enable the invitee to avoid the harm, instead of, as now, requiring him to exercise reasonable care to protect against the danger. The obligation imposed by this section applies not only to the original construction but also to the condition of the premises thereafter, and imposes upon the landowner a duty to discover its actual condition and to make such repairs, furnish such safeguards, or give such warnings as may be reasonably necessary. Id., § 343, comment (b), at p. 216. The authors' comment as to situations in which the hazard is known or obvious, id., § 343A, comment (f), closely follows that quoted from 2 Harper and James, supra, at pp. 1491-92.
*114 Prior to the revision of the Restatement referred to, and three days after the granting of the motion for judgment n.o.v. sub judice, our Supreme Court rendered its opinion in McGrath v. American Cyanamid Co., 41 N.J. 272 (1963), in which it held:
"So, also, both opinions in the Appellate Division appear to say that if the deceased appreciated the danger, that appreciation alone would have barred him. Such appreciation, however, would not have sufficed, and this would be clear if the case were approached in uncomplicated terms of negligence and contributory negligence. Thus approached, the issue of defendant's breach of duty would be two-fold: (1) whether the danger was due to a failure to exercise due care or (2) if it was a danger which due care would not have avoided, nonetheless would due care require notice or warning to the decedent. Decedent's appreciation of the danger would be pertinent as to (2), for there would be no need to inform one of a danger he already knows. On the other hand, if the danger was created by defendant's breach of duty, that negligence would not be dissipated merely because the deceased knew of it. Negligence would remain, but such knowledge would take us to the question of contributory negligence, and the deceased would not be barred on that account simply because he knew of the hazard."
While the facts and issues before the court were somewhat different from those before us, the ruling is consistent with the rule cited in the revision.
We believe that the rule referred to is the better reasoned one and that the facts before us come within the area of its application. Cf. Taneian v. Meghrigian, 15 N.J. 267, 275 (1954). Here there was no proof that plaintiff had previously observed or had knowledge of the specific guy wire which caused his fall. Assuming that he had observed wires on the roof, or that they were so obvious that he should have done so, the question remained whether, considering the nature and location of the hazard and the work which he was required to perform on the roof, he was entitled to more than mere knowledge of the existence of the wires, i.e., to have them flagged or painted a contrasting color in accordance with the standard testified to by plaintiff's expert and inferentially confirmed by Poling. This called for a factual determination. There were factors from which the jury *115 could have concluded that, even if plaintiff was chargeable with prior knowledge of the presence of the offending wire, defendants had reason to expect that, as he pursued his work on the roof, his attention would be distracted so that he would forget its location or fail to protect himself against it. These factors included the weight and bulk of the molten tar which plaintiff was carrying, its dangerous character and the consequent necessity of preventing it from spilling, and the presence of other obstructions to be guarded against (ventilators, pipes, parapets and television antennas). From this we conclude that the determination as to whether defendants' negligence had been established by the proofs was properly submitted to the jury.
The issue of plaintiff's contributory negligence likewise presented a jury question. In the absence of proof that plaintiff had actually observed the wire which tripped him or that it had been called to his attention, defendants point out that plaintiff had worked on the roof the day before and for approximately two hours on the date of the accident and was chargeable with knowledge of the structures and obstructions which were there. But even if plaintiff knew of the danger, that knowledge alone would not have barred him. Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 222 (1954). The issue would still have been whether he had proceeded as a reasonably prudent man in view of the known risk, McGrath v. American Cyanamid Co., supra, 41 N.J., at p. 275, either in incurring the risk, or in the manner in which he proceeded in the face of it. Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 55 (1959). Ferrie v. D'Arc, 31 N.J. 92 (1959), relied upon by defendants, is clearly distinguishable in that Mrs. Ferrie admitted actual knowledge of the absence of the railing, and there was no proof of circumstances which would divert or distract an ordinary prudent person. Here, fair-minded men of ordinary prudence might well have differed, under the proofs adduced, as to whether plaintiff acted as an ordinary prudent man would act. Kopec v. Kakowski, 34 N.J. 243, 247 (1961).
*116 Defendants next contend that inconsistency between the verdict against them and the verdict absolving Siegel compels a reversal. We disagree. While both defendants and Siegel owed the same general duty of care to invitees, the jury could well have found that defendants alone had been delinquent in the performance of their duty to inspect and warn of danger. They had retained control over the roof even though they permitted the presence thereon of Siegel's air conditioner tower. The roof was not a place where persons ordinarily would be expected to be. Defendants engaged plaintiff's employer to repair the roof and were duty bound to see that it was reasonably safe for the performance of the work contracted for. Murphy v. Core Joint Concrete Pipe Co., 110 N.J.L. 83, 86 (E. & A. 1933). At the time the contract was made Mr. Toop actually went onto the roof and had an opportunity to observe its condition. On the other hand, the jury could well have found that Siegel had no reason to anticipate the presence of plaintiff as an invitee on the roof and thus was under no obligation to make an inspection of the guy wires at that time.
Defendants finally contend that, in any event, the jury's verdict was contrary to the weight of the evidence and should have been set aside as the product of mistake, sympathy or prejudice. But the trial judge may not weigh the evidence or substitute his judgment for that of the jury. He  and we  are limited to canvassing the record to determine whether reasonable minds might accept the evidence as adequate to support the jury's verdict. Kulbacki v. Sobchinsky, 38 N.J. 435, 445 (1962). So considered, we are satisfied that the verdict of the jury should be sustained in all respects.
Reversed.
GAULKIN, S.J.A.D. (dissenting.)
I dissent. I would affirm the judgment n.o.v. Like the trial judge, I find no negligence on the part of the Toops. They were under no duty to plaintiff to paint the wires or flag them. Plaintiff was *117 a roofer. Guy wires, antennas, flag poles, vents, air conditioning apparatus, drains and numerous similar things are commonplace on roofs, and roofers are more familiar with them and the problems they create than the property owner. Plaintiff's employer was hired to cover the entire roof with tar, which necessarily involved working around all the obstacles on the roof and allowing for them. If extra care was required because of the nature of some of these obstacles, either to protect tenants or workers on the property, that was the roofer's duty. That was what the Toops hired him for and had the right to expect of him.
If the plaintiff were a tenant who was permitted to go upon the roof to sun himself, or some other invitee whose business was not roof repairs, the Toops might be liable. Here I see neither duty nor negligence.