**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4961-18T4

THOMAS SALASEVICIUS,

    Plaintiff-Appellant,

v.

JOHN CARIDDI, and ESTATE
OF ANN MARIE CARIDDI,

    Defendants-Respondents.

_____

Argued September 21, 2020 – Decided October 20, 2020

Before Judges Currier and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5962-17.

Adam B. Lederman argued the cause for appellant (Davis, Saperstein & Salomon, PC, attorneys; Adam B. Lederman, of counsel and on the briefs; Jorge R. de Armas, on the briefs).

Thomas A. Morrone argued the cause for respondents (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Thomas A. Morrone, of counsel and on the brief; James B. Shovlin, on the brief).

PER CURIAM

Plaintiff appeals from the April 26, 2019 Law Division order granting summary judgment dismissal of his personal injury complaint against defendant homeowners John Cariddi, and his now deceased wife, Anne Marie Cariddi, represented by her Estate. Plaintiff also appeals from the June 21, 2019 order denying his motion for reconsideration. Having considered the arguments and applicable law in light of the record, we affirm.

The action stems from personal injuries plaintiff sustained when he fell from a ladder while performing home improvement and maintenance services at defendants' residence. The relevant facts, viewed in the light most favorable to plaintiff, as the summary judgment standard requires, Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)), reveal that on August 10, 2016, Anne Marie[1] hired plaintiff, who had previously worked at the property, to perform various tasks, including repairing and cleaning the roof. To perform the repairs, using Anne Marie's credit card, plaintiff purchased a new ladder from Home Depot, which he used at the property over the course of several days without incident.

---

[1] We refer to defendants by their first names to avoid any confusion caused by their common surname, and intend no disrespect.

On or about August 27, 2016, as he had done on prior days, plaintiff positioned the ladder to rest against the side of the house, while the bottom of the ladder rested on the Cariddis' deck. When plaintiff climbed the ladder to access the roof, the ladder moved, and plaintiff fell. As a result of the fall, plaintiff injured his left shoulder and his right knee, and experienced pain in his neck and back. He subsequently sought treatment for his injuries.

On September 1, 2017, plaintiff filed a three-count complaint, alleging that defendants' negligent maintenance of the deck caused him to "fall" and "sustain severe personal injuries." During his deposition, plaintiff clarified that although he previously thought the fall occurred on August 27, he "believe[d]" that "it was closer to August 10[th] than it was [to] the 27th or 28th." In support, plaintiff submitted a doctor's report of an August 12, 2016 visit, in which he reported falling off a ladder and injuring his knee.

When asked during the deposition what caused the fall, plaintiff testified that when "[he] was going up the ladder" to remove "stuff" from the roof, the ladder "shuddered downwards and then veered to the right[,]" causing him to fall. However, "[he did not] know" what caused the ladder to move. Plaintiff explained that because it was a "locking" ladder, "it kind of caught [him] off

A-4961-18T4

guard that it moved at all" particularly since the locks on the ladder remained engaged.

When questioned by his attorney, plaintiff testified that he observed "something [brown in color] stu[c]k to the bottom of the ladder[,]" and "[the deck] was missing some [brown] paint in [the] area" where the feet of the ladder had been located prior to the fall. Plaintiff testified it was "possibl[e]" that the ladder slipped because the paint on the deck became dislodged. He explained that "it [was ninety-three] degrees out" and implied that the heat may have caused the paint to separate from the deck. However, he acknowledged that the ladder had never shuddered or shifted on any of the other days he worked on the roof. Plaintiff also testified that after he fell, he continued to work and continued to use the ladder to gain access to the roof.

John testified during his deposition that the deck paint would peel "every couple of years" due to wintertime conditions and "[w]ear-and-tear." He testified that "[m]aybe a year . . . or two" prior to the fall, he had repainted the deck with an acrylic deck stain, but he never used a clear coat, a sealant coat, or a slip resistant epoxy over the stain. He acknowledged that on the date of the fall, there was paint peeling on the deck. However, he testified that plaintiff

A-4961-18T4

"had told [him] that . . . one of the things he was going to do" was to scrape the paint off the deck and "refinish it."

The only witness to the fall was Anne Marie, who passed away less than a year later on May 31, 2017, before she was deposed. Dorothy Nicklus, Anne Marie's cousin and plaintiff's girlfriend, testified during her deposition that after the fall, Anne Marie called her and told her that plaintiff "fell off the ladder, banged his head a couple of times," but refused "to go to the emergency room or see a doctor." According to Nicklus, Anne Marie specifically said "she saw the ladder give way and [plaintiff] fall," but she did not say what caused the ladder to give way.

According to Nicklus, upon arriving at the scene approximately thirty minutes after Anne Marie called, Nicklus saw the ladder "laying on the deck." She observed "gooey, gummy paint . . . stuck on the . . . feet of the ladder" that "was the same color as the deck." Nicklus testified that it appeared as if the feet of the ladder had scraped up the paint from the deck because there was paint missing from the deck in the area where the ladder was located, as well as other areas on the deck. Nicklus confirmed that "[i]t was very hot" and she believed the heat may have affected the paint.

On December 7, 2018, the trial judge granted plaintiff's motion to extend the discovery period an additional 120 days to April 15, 2019. Pursuant to the discovery order, plaintiff's expert reports were to be served by March 15, 2019. The order also noted that "[a]rbitration [was] scheduled for May 15, 2019[,]" and "[n]o further extensions of discovery" would be granted "barring exceptional circumstances." No expert reports were served by plaintiff by the deadline. Thus, in March 2019, defendants moved for summary judgment based on plaintiff's failure to establish a prima facie case. On March 19, 2019, while the summary judgment motion was pending, plaintiff moved to adjourn the scheduled arbitration date and further extend the discovery period an additional ninety days. In support, plaintiff's counsel certified that "[p]laintiff's liability/engineering expert, . . . who [had] performed a site inspection, passed away," and the "new liability expert, Kelly Kimiecik," had to reinspect the property "to provide a complete report." Plaintiff's motion to extend the discovery period and adjourn the arbitration date was denied.[2]

On April 12, 2019, while the summary judgment motion was still pending but prior to the April 15, 2019 discovery end date, plaintiff served a preliminary evaluation prepared by Kimiecik. In the evaluation, Kimiecik opined "[b]ased

---

[2] The order denying the motion was not included in the record.

on reasonable engineering probability," that (1) "the condition of the deck stain/paint on the [deck's] exterior walking surfaces [was] caused by weather conditions, mold accumulation, normal deck usage, and/or improper installation of the deck stain/paint product[;]" (2) the condition of the "deck surface" at the time of the fall was "unsafe[,]" and it was "reasonably foreseeable that a ladder placed on the deck, with superimposed loads, could result in disengagement of the paint and a ladder to slip[;]" and (3) "the paint disengagement from the . . . deck surface resulted in the ladder slippage" and caused "both the ladder and . . . plaintiff to fall to the deck surface and . . . plaintiff to become injured." Kimiecik's evaluation was based on her review of the deceased expert's preliminary report, deposition testimony, photographs of the deck taken by plaintiff, and industry sources related to home and deck maintenance. Kimiecik reserved the right to amend her opinion "upon the performance of a site inspection" and "an inspection of the subject ladder."

Oral argument on defendants' summary judgment motion was conducted on April 26, 2019. Following oral argument, the judge granted the motion over plaintiff's objection and dismissed plaintiff's complaint with prejudice in an order entered on April 26, 2019. In an accompanying statement of reasons, the judge applied the summary judgment standard delineated in Rule 4:46-2(c), and

expounded in <u>Brill</u>, 142 N.J. at 540, and concluded that "[p]laintiff fail[ed] to establish a case of [prima facie] negligence against [d]efendants." Specifically, "[p]laintiff . . . failed to prove that [d]efendants breached any legal duty owed to him on the date of the accident," and failed to prove that "the condition of [the] deck in any way proximately caused [p]laintiff's alleged fall." As to causation, the judge explained that "[p]laintiff simply speculates that this was the case[] and submits a conclusory expert's report in support of this contention." In support, the judge pointed to plaintiff's deposition testimony wherein "[p]laintiff testified that he felt the ladder 'shudder,' but was unsure as to what cause[d] it to do so."

Regarding defendants' purported breach of a legal duty, applying <u>Hopkins v. Fox & Lazo Realtors</u>, 132 N.J. 426, 438-39 (1993), the judge noted that "in assessing the landowner's general tort obligation to avoid foreseeable harm to others[,]" the "measure of duty is care in proportion to the foreseeable risk." Thus, according to the judge,

> [p]laintiff must show that [d]efendants ought to have foreseen, under the attending circumstances, that the natural and probable consequence of [Anne Marie's] act or omission would have been some injury. Stated otherwise, [p]laintiff has the burden of showing that an ordinary person, under similar circumstances and by the use of ordinary care, could have foreseen the result and either would not have acted, or would have taken

precaution to avoid the result. Plaintiff, however, was unable to meet this requisite standard.

Plaintiff stated in his deposition that prior to doing any repair or maintenance work at the subject property, he and [Anne Marie] planned out the work to be completed. He also worked at the property for at least a week before the accident occurred. There is nothing in the record to suggest that [p]laintiff ever raised concerns regarding the condition of the deck to [Anne Marie]. Furthermore, the fact that [p]laintiff continued to place the ladder on the deck for an entire week while performing maintenance and repairs before the accident supports a finding that [d]efendants [could not] have foreseen that injury was likely to occur, as [p]laintiff himself was not concerned about the condition of the deck in relation to his own placement of the ladder.

It is clear from [p]laintiff's statements at his deposition that even if [d]efendants' deck had been negligently maintained, [p]laintiff himself bought the ladder, erected the ladder, and either failed to notice the deck's condition, or continued to work in spite of it. Therefore, [p]laintiff cannot establish that [d]efendants could have foreseen the injury [p]laintiff sustained[] and were negligent in failing to prevent . . . [p]laintiff from conducting the work as he deemed appropriate.

On May 15, 2019, plaintiff moved for reconsideration, which was denied in an order entered on June 21, 2019. In an accompanying statement of reasons, the judge determined plaintiff failed to establish grounds for relief pursuant to Rule 4:49-2 and the standard articulated in Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). The judge rejected plaintiff's contention that he

applied a palpably incorrect legal standard to establish defendants' obligation to avoid foreseeable harm. As to causation, the judge reiterated:

> [T]he [c]ourt correctly ruled that [p]laintiff would be unable to establish that the condition of [d]efendants' deck was the proximate cause of the subject injury. Specifically, the [c]ourt considered [p]laintiff's testimony that he was unsure as to the cause of the accident and . . . Nicklus' testimony about the condition of the deck paint. [Anne Marie's] testimony was properly not considered by the [c]ourt, as they were inadmissible hearsay statements. The [c]ourt also considered [p]laintiff's expert's testimony, despite it being of limited value.

This appeal followed.

On appeal, plaintiff argues the judge erred in determining "as a matter of law" that plaintiff "could not establish . . . a prima facie case" of negligence because "the record viewed in the manner required on a motion for summary judgment" dictated otherwise. Plaintiff also asserts the judge erred in denying his motion for reconsideration "[f]or the same reason."

We review "de novo a ruling on a motion for summary judgment, applying 'the same standard governing the trial court[.]'" Richter v. Oakland Bd. of Educ., 459 N.J. Super. 400, 412 (App. Div. 2019) (alteration in original) (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citations omitted) (quoting R. 4:46-2(c)).]

At the summary judgment stage, the opposing party must produce evidence that creates a genuine issue of material fact, and "conclusory and self-serving assertions . . . are insufficient to overcome the motion[.]" Puder v. Buechel, 183 N.J. 428, 440-41 (2005). "If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of [Rule 4:46-2]." Brill, 142 N.J. at 540. Further, if "the evidence is utterly one-sided[,]" a trial court has the authority to "decide that a party should prevail as a matter of law." Gilhooley v. Cty. of Union, 164 N.J. 533, 545 (2000) (citing Brill, 142 N.J. at 540). In our review, if there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and "accord no

deference to the trial judge's legal conclusions." Richter, 459 N.J. Super. at 412 (citing Nicholas v. Mynster, 213 N.J. 463, 478 (2013)).

"Reconsideration should be granted only where 'either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[.]'" Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 541 (App. Div. 2019) (alterations in original) (quoting Cummings, 295 N.J. Super. at 384). We review the denial of a motion for reconsideration for an abuse of discretion, Cummings, 295 N.J. Super. at 389, which only "arises when a decision is made without a rational explanation," "rested on an impermissible basis" or was "based upon a consideration of irrelevant or inappropriate factors." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (citations omitted).

We now turn to the elements of the cause of action governing this appeal. "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages[.]'" Vizzoni v. B.M.D., 459 N.J. Super. 554, 568 (App. Div. 2019) (alterations in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). While "[a] 'plaintiff bears the burden of establishing those

12

elements "by some competent proof[,]"'" ibid. (quoting Davis, 219 N.J. at 406), "[d]etermining the scope of tort liability presents a question of law." Ibid.

"Proximate cause consists of 'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Ibid. (quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 418 (1996)). On the other hand, "[f]oreseeability of the risk of harm is the foundational element in the determination of whether a duty exists." J.S. v. R.T.H., 155 N.J. 330, 337 (1998). Indeed, "[f]oreseeability is significant in the assessment of a duty of care to another" and "has a dual role in the analysis of tort responsibility." Olivo v. Owens-Ill., Inc., 186 N.J. 394, 402 (2006).

"In the duty of care analysis, foreseeability 'is based on the defendant's knowledge of the risk of injury and is susceptible to objective analysis.'" Vizzoni, 459 N.J. Super. at 569 (quoting J.S., 155 N.J. at 338). "That knowledge may arise from actual awareness, or knowledge may be constructive when the defendant 'was in a position to foresee and discover the risk of harm[.]'" Ibid. (quoting Carvalho v. Toll Bros. & Devs., 143 N.J. 565, 576, 578 (1996)). "Also included in the analysis is 'an assessment of the defendant's "responsibility for conditions creating the risk of harm" and an analysis of whether the defendant

A-4961-18T4

had sufficient control, opportunity, and ability to have avoided the risk of harm.'" Podias v. Mairs, 394 N.J. Super. 338, 350 (App. Div. 2007) (quoting J.S., 155 N.J. at 339).

"Once the foreseeability of an injured party is established, . . . considerations of fairness and policy govern whether the imposition of a duty is warranted." Carvalho, 143 N.J. at 573 (alteration in original) (quoting Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc., 135 N.J. 182, 194-95 (1994)). "The assessment of fairness and policy 'involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Vizzoni, 459 N.J. Super. at 569 (quoting Hopkins, 132 N.J. at 439).

> Although in many cases a duty of care can arise simply from the determination of the foreseeability of harm, usually "more is needed" to find such a duty, that "'more' being the value judgment, based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care."
>
> [Carvalho, 143 N.J. at 573 (quoting Kelly v. Gwinnell, 96 N.J. 538, 544 (1984)).]

That "analysis is both very fact-specific and principled[.]" Hopkins, 132 N.J. at 439 (citations omitted).

Here, plaintiff asserts the judge "erroneously determined that no duty existed on the part of [defendants] to prevent the [alleged] accident" notwithstanding the fact that defendants "concede[d] that [plaintiff] was an invitee on [defendants'] property."  As a general matter, landowners who invite independent contractors to come upon their premises are "under a duty to exercise ordinary care to render reasonably safe the areas in which [the contractor] might reasonably expect . . . to be working."  Sanna v. Nat'l Sponge Co., 209 N.J. Super. 60, 66 (App. Div. 1986).  This duty requires that landowners make "a reasonable inspection to discover defective and hazardous conditions," and imposes the obligation to "either mak[e] the condition of [the] premises reasonably safe or giv[e] adequate warning . . . ."  Ibid. (citing Zentz v. Toop, 92 N.J. Super. 105, 113 (App. Div. 1966)).  "Moreover, the duty of a landowner to such an invitee is nondelegable[,]" and "[t]he possibility that another person may also have been negligent does not relieve the landowner of his legal duty."  Id. at 66-67.

However, in Zentz, 92 N.J. Super. at 113, we quoted and relied upon the then recently amended version of Restatement (Second) of Torts § 343 (Am. Law Inst. 1965) as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

> (c) fails to exercise reasonable care to protect them against the danger.

We also noted that the quoted section must be read in conjunction with section 343A(1), which deals with conditions known to the invitee or are obvious to him, and reads, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Zentz, 92 N.J. Super. at 113 (quoting Restatement (Second) of Torts § 343A(1) (Am. Law Inst. 1965)).

Here, it was plaintiff's contention that defendants breached the duty of care they owed plaintiff by negligently maintaining the deck, resulting in peeling paint on the deck surface, which caused plaintiff to fall and sustain injuries when the ladder he placed on the deck moved out of position as he climbed the ladder.

A-4961-18T4

However, the record indisputably shows that on the date of plaintiff's fall, the condition of the peeling paint on the deck was obvious. Even assuming plaintiff established defendants owed and breached a duty of care relating to the manner in which plaintiff was injured, plaintiff failed to establish a proximate causal relationship between defendants' negligence and the resulting injury.

In that regard, although ladders can be dangerous, the critical inquiry is the cause of the ladder moving, resulting in plaintiff falling and sustaining injuries. By his own admission, plaintiff did not know what caused the ladder to move and testified it was "possibl[e]" that the ladder slipped because the paint on the deck became dislodged. However, the "mere possibility" that a defendant's negligence may have caused an injury is not enough. Davidson v. Slater, 189 N.J. 166, 185 (2007) (citation omitted). To establish causation, plaintiff's proofs must "justify a reasonable and logical inference as distinguished from mere speculation." Thorn v. Travel Care, Inc., 296 N.J. Super. 341, 347 (App. Div. 1997) (quoting Kulas v. Pub. Serv. Elec. & Gas Co., 41 N.J. 311, 319 (1964)). Likewise, in her deposition, Nicklus did not state what caused the ladder to move. Instead, she testified about her observations of the condition of the deck and the ladder upon her arrival at the scene after plaintiff had fallen.

To support his contention that he established causation, plaintiff argues the judge erred in not considering Anne Marie's hearsay statements to Nicklus after plaintiff fell, and in characterizing Kimiecik's expert findings as "conclusory." "When, as in this case, a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010)). "Appellate review of the trial court's decisions proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid. We apply a deferential approach to a trial court's evidentiary determination, "reviewing it against an abuse of discretion standard." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

Here, the judge determined that Anne Marie's statements "were inadmissible hearsay statements" but did not specify the basis for that conclusion. Plaintiff submits the proffered statements were admissible under N.J.R.E. 803(b)(1), governing statements by party opponent, N.J.R.E. 803(c)(25), pertaining to statements against interest, and N.J.R.E. 804(b)(6), as trustworthy statements of a deceased declarant. Even if the judge had

18

considered Anne Marie's statements, despite witnessing the fall, like Nicklus, Anne Marie did not say what caused the ladder to "give way."

The only evidence offered by plaintiff to establish that the condition of the deck was the proximate cause of the ladder moving was the report by his expert, Kimiecik. However, we agree with the judge's implicit finding that Kimiecik's opinion that "the paint disengagement from the . . . deck surface" caused the ladder and plaintiff to fall constituted an impermissible net opinion. "Proximate cause may . . . be removed from the jury's determination if causation depends on the validity of an expert's report." Vizzoni, 459 N.J. Super. at 576. To be valid, an expert opinion must be grounded in "facts or data" and "[t]he net opinion rule . . . 'forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Townsend, 221 N.J. at 53-54 (quoting Polzo, 196 N.J. at 583). "The rule requires that an expert 'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). Stated differently, the rule "mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology

are reliable.'" Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

Here, Kimiecik's report, which was admittedly a preliminary evaluation conducted without a site inspection or an inspection of the ladder, provided a conclusion with all the hallmarks of a net opinion. Because "no reasonable factfinder could find that . . . plaintiff has proven causation by a preponderance of the evidence," granting summary judgment dismissal of plaintiff's claim was warranted. Id. at 60. Accordingly, the judge properly entered summary judgment in defendants' favor, and we discern no abuse of discretion in the judge's denial of plaintiff's motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4961-18T4